652 So.2d 1148 (1995)
FLORIDA MEDICAL MALPRACTICE JOINT UNDERWRITING ASSOCIATION and St. Paul Fire & Marine Insurance Company, Appellant,
v.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.
No. 93-0009.
District Court of Appeal of Florida, Fourth District.
January 18, 1995.
Rehearing Denied April 20, 1995.
Bruce Culpepper, Scott H. Michaud, and James T. Ferrera of Michaud, Buschmann, Fox, Ferrera & Mittelmark, P.A., Boca Raton, and Darren A. Schwartz, Tallahassee, for appellants.
Linda Wells, Daniel S. Pearson, and Lucinda A. Hofmann of Holland & Knight, Miami, for appellee.
FARMER, Judge.
We review a judgment upon a jury verdict in which an excess insurance carrier recovered bad faith damages from the primary carrier equal to the amount of the settlement exceeding the primary coverage. Although a number of issues have been raised on this appeal by the primary carrier, we discuss only one, immunity from suit, the others having no merit. We affirm.
Juan Figueredo sued the Miami Children's Hospital [MCH] in medical malpractice for severe injuries to his daughter that he claimed resulted from premature discharge from the hospital's ER, and negligent treatment after she was admitted, including a surgery that closed with a sponge in the patient, all of which left her blind, deformed, scarred, and comatose. MCH had primary insurance with the Florida Medical Malpractice Joint Underwriting Association [JUA] in the amount of $500,000. The JUA in turn had contracted with St. Paul Fire & Marine Insurance Company [St. Paul] to service and adjust claims against its insureds in the same way that the JUA could do if it were doing the servicing. Under the contract, St. Paul had complete control and authority in its handling of claims; in effect the JUA had given St. Paul full and sufficient power to act in its place, including the obligation to provide JUA's insureds with a defense.
Meanwhile, MCH also had a policy with Indemnity Insurance Company of North America [IINA] providing excess coverage from $500,000 up to $20,000,000. IINA was a true excess carrier, with no responsibility to provide its insured with coverage for the *1149 first $500,000 of any claim or with its primary defense.
Some two years after suit was filed, counsel for the personal injury plaintiff made a demand to settle the case for $375,000, or well within the primary coverage.[1] St. Paul never responded to the demand, although it had had nearly two years to evaluate the case; nor did it ever notify IINA of it.[2] When no response was forthcoming after a month's time had elapsed, the lawyer withdrew it.
In May 1987, the case finally settled for $1,250,000, of which amount IINA paid $750,000. IINA sued St. Paul and the JUA for statutory and common law bad faith in the investigation, evaluation, and settlement of the Figueredo claim. After a two-week trial, a jury returned a verdict in favor of IINA.
On appeal, JUA and St. Paul claim immunity from this kind of lawsuit under section 627.351(4)(c), Florida Statutes (1993).[3] The immunity defense was not raised in any pleading or pretrial stipulation. It was asserted for the first time on the sixth day of trial, couched as a motion to dismiss the claims on the grounds that the court lacked subject matter jurisdiction because of the JUA and St. Paul's lately filed claim to immunity. We agree with IINA's arguments on appeal.
Plainly the claim of immunity does not implicate the question of subject matter jurisdiction and was, therefore, an affirmative defense that was waived by not being pleaded before trial. In City of Pembroke Pines v. Atlas, 474 So.2d 237 (Fla. 4th DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986), the city was sued for damages from a personal injury. After the entry of a default judgment, the city asserted for the first time that it was immune from suit and that in failing to allege compliance with section 768.28 plaintiff's complaint did not vest the court with subject matter jurisdiction of the suit. On appeal, we noted that even though the city had knowledge of the claim and suit, it had failed to raise the pleading defect until after entry of final judgment. We held:
"appellee's failure to allege compliance with the statutory notice provision did not deprive the circuit court of subject matter jurisdiction because such an allegation is not an element necessary to the existence of subject matter jurisdiction."
474 So.2d at 238. We conclude that the Atlas holding applies to the assertion of immunity in this case.[4]
There is little difference between the kind of immunity conferred on municipalities under section 768.28, and that conferred on the JUA and its agents under section 627.351(4). The latter statute does not state that the court shall lack jurisdiction of any claim brought against the JUA or its agents; in fact it merely says that "there shall be no liability * * * and no cause of action of any nature shall arise * * *." Hence, we conclude that kind of immunity conferred by this statute is an ordinary affirmative defense which must be pleaded or it is deemed waived. Appellants' attempt to assert it for the first time on the sixth day of trial was *1150 improper without the consent of the adverse party and the approval of the court.
We disclaim making any decision as to whether the immunity granted by section 627.351(4) would operate to avoid the kinds of claims asserted by IINA. Our decision is purely a procedural one, with no implications on the substantive questions raised by IINA as to the scope of the immunity granted by this statutory provision.
AFFIRMED.
GUNTHER, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] There was a dispute as to whether the lawyer had the authority to make the offer, which we assume the jury resolved in favor of IINA.
[2] Within weeks after suit was filed, an adjustor with St. Paul wrote a report recommending settlement if the allegations of the sponge were "correct and documented." Several weeks after that recommendation St. Paul received the child's medical records and sent them to two physicians for evaluation. One of the two doctors concluded that MCH was liable for the sponge mistake, and concluded that there was an issue as to whether MCH was responsible for a premature discharge from the hospital as well as other issues. Another consultant to St. Paul told it that plaintiff's attorney was known to prefer settling medical malpractice cases rather than trying them. IINA prodded St. Paul to settle the case, but it wasn't until March 1987 that it made the first offer  $400,000.
[3] That statute provides in part: "There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, self-insurer, or its agents or employees, the Joint Underwriting Association or its agents or employees, members of the board of governors, or the department or its representatives for any action taken by them in the performance of their powers and duties under this subsection."
[4] The second district has decided this issue contrary to the position we took in Atlas. We certify conflict with Sebring Utilities Commission v. Sicher, 509 So.2d 968 (Fla. 2d DCA 1987).